Rose BAKER; Helen Martin; James R. Baker, Jr.; And Darwin Martin, Appellants,

v.

Lois WEINBERG; Burl Wells Spurlock; Jed Weinberg; B.B. King; Jesse Hagewood; Betty Minix; and Nell Hagewood, all on behalf of T.A. Martin Partners; Lambert–Spurlock Partnership; and Clean Gas Company, Inc., Appellees.

No. 2005–CA–001326–MR.

Court of Appeals of Kentucky.

May 16, 2008.

As Modified Sept. 12, 2008.

William P. Sturm, Lexington, KY, for Appellant.

Ronald G. Combs, Hazard, KY, Randy A. Campbell, Hindman, KY, for Appellee.

Before LAMBERT and WINE, Judges; HENRY,[1] Senior Judge.

*OPINION*

HENRY, Senior Judge.

Surface owners Rose Baker, Helen Martin, James R. Baker Jr., and Darwin Martin appeal from an order of the Knott Circuit Court awarding summary judgment to the appellees in a dispute involving the ownership and leasehold of the oil and gas rights underlying the appellants' surface property. For the reasons stated below, we vacate the award of summary judgment and remand for additional proceedings consistent with this opinion.

In the nineteenth century John W. Bates came into ownership of property situated in the Bates Branch area of Knott County. Following his death in 1889, the portion of that property we are concerned with came to be owned by Miles Bates, Sr. Prior to his death, Miles, Sr. conveyed a portion of this land to his sons Columbus Bates (Rose and Helen's father) and Gratz Bates. Upon Columbus's death, his tract descended to Rose. Gratz's tract eventually descended to his son Jessie Bates, and was thereafter purchased by Helen and Darwin.

In the meantime, in 1912 Miles, Sr., and his wife severed the mineral rights from the surface rights and deeded the mineral rights to Tandy Martin. In 1944 and 1945 Tandy Martin leased the oil and gas rights to the mineral tract to W.W. Cooley. In approximately 1945 a gas well was drilled on the section of the property now owned by Helen and Darwin. At about this same time the T.A. Martin[2] Partnership was formed with the objective of working the well. It appears that the Partnership had acquired the oil and gas rights of the

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. Tandy Martin and T.A. Martin are the same person.

Cooley lease, and thus those partners and their successors (if the lease is still valid) are the persons entitled to remove gas from the mineral estate. The record discloses that the well was drilled by Lawrence Hall, who was also a member of the Partnership. It further appears that Hall was the operator of the well and the well was registered in his name.

The appellants contend that Hall was promptly "shooed out," and that no commercial production of gas has ever occurred in connection with the well. There is other evidence of record, however, that the well produced wholesale gas from 1945 until 1981, when Columbus Bates did indeed chase off the well tender at gunpoint. There is evidence in the record that following this incident the decision was made to cease operating the well to "avoid getting somebody killed."

In 1971 Tandy Martin leased the coal rights to his mineral tract to Ray Fraley. In 1979 Ray subleased the rights to his son, Carl Ray Fraley. In 1980 Carl Ray and the heirs of Tandy Martin filed a lawsuit naming, among others, Columbus Bates and Jessie Bates, to enforce Carl Ray's right to mine the coal. On May 23, 1982, final judgment was entered in the case. The judgment stated, among other things, that "it is further ORDERED AND ADJUDGED that the Plaintiffs, heirs of T.A. Martin, are the owners of all the mineral thereon and underlying the lands described in the deed from Miles Bates and Angeline Bates, his wife, to T.A. Martin, dated December 16, 1912...." [3] The appellants contend that the judgment has "never been enforced," and that the minerals underlying their property were not disturbed until the events precipitating the present lawsuit.

Clean Gas is a family gas business owned by Bill Weinberg, his wife Lois Combs Weinberg, their son Jed Weinberg and, it appears, by other members of the Weinberg family. Clean Gas seeks out gas leases in Eastern Kentucky and sells the removed gas to wholesale gas distributors.

Columbus Bates died March 20, 1996. Thereafter Clean Gas became interested in working the 1945 well. The record reflects that members of the Weinbergs' extended family were successors to interests in the T.A. Martin Partnership which, again, had been assigned the W.W. Cooley lease in the 1940s.

Believing that the lease was still valid, Clean Gas set about locating other successors to interests in the T.A. Martin Partnership, including Burl Wells Spurlock, B.B. King, Jesse Hagewood, Betty Minix, and Nell Hagewood. In due course Clean Gas assembled what it alleges to be a majority of the T.A. Martin Partnership interests and, in effect, obtained a vote from the partners to remove gas from the Tandy Martin mineral estate, beginning with reworking the 1945 well. As part of its preparations Clean Gas executed a Department of Mines and Minerals Well Transfer form dated August 21, 1997, purporting to transfer from Lawrence Hall (who was then deceased) to Clean Gas the operating rights to the 1945 well.

In August 1997 Clean Gas first entered upon the property to commence gas operations, including reworking the 1945 well. In connection with this, Clean Gas graded a road to the well which it claims constituted the original surface easement to the well, a claim denied by the appellants. The appellants quickly moved to stop the Clean Gas operations by, among other

---

**3.** This judgment did not surface in the present litigation until 2002—five years after the original complaint was filed.

things, felling a tree to block the newly graded road to the well.

On September 17, 1997, the above captioned appellees filed a complaint in Knott Circuit Court.[4] The Complaint sought an injunction restraining the appellants from interfering with the appellees' efforts to exercise their rights to the Tandy Martin mineral tract as successor in interest to the Cooley lease. At about the same time the appellees obtained a temporary injunction restraining the appellants from interfering with their gas operations on the Tandy Martin mineral tract.

The appellants answered, and also filed a counter-claim seeking, among other things, to quiet title to the mineral tract in their favor on the basis of adverse possession.[5] They also sought damages for the appellees' trespass onto their property. We note at this point that no Tandy Martin heirs, known or unknown, are identified as parties to the litigation. As owners of the mineral estate, they would be entitled to royalties under the Cooley lease and, further, would be crucial parties to any litigation purporting to affect their ownership to the mineral estate.

Following extensive litigation, on March 3, 2005, the trial court entered an award of summary judgment in favor of the appellees on the basis that the 1982 judgment in the prior lawsuit was *res judicata* as to all issues in the case. On May 24, 2005, the trial court entered an order modifying the prior judgment to reflect that summary judgment was not granted upon the appellants' claim for property damages. This appeal followed.

*STANDARD OF REVIEW*

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rule of Civil Procedure (CR) 56.03. "The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001), *citing Steelvest v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480–82 (Ky.1991).

"The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis,* 56 S.W.3d at 436, *citing Steelvest,* 807 S.W.2d at 482. The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Steelvest,* 807 S.W.2d at 480. The Kentucky Supreme Court has held that the word "impossible," as set forth in the standard for summary judgment, is meant to be "used in a practical sense, not in an absolute sense." *Lewis,* 56 S.W.3d at 436.

---

4. Margie Dials, who also owns property in the area, was originally listed as a plaintiff on the Complaint, but was soon dismissed from the case based upon her belief that she was "tricked" into becoming a plaintiff.

5. While the adverse possession claim was inartfully pled, and the shortcomings were not improved upon in subsequent amendments to their cross-claim, the claim was squarely litigated in the trial court proceedings and is an issue in this appeal. There is no assertion by the appellees that the claim was not properly preserved in the trial court proceedings.

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo." *Lewis* at 436.

## QUIET TITLE ISSUES

In their counterclaim, the appellants asserted title to the Tandy Martin mineral tract upon the basis of adverse possession. The trial court awarded summary judgment on this issue based upon the 1982 judgment in the coal lease case and the doctrine of *res judicata*.

Four of the arguments raised by the appellants concern their adverse possession claim: Argument 3 that "there is a question of material fact concerning Rose's and Helen's adverse possession claim to the oil and gas"; Argument 4 that "the alleged assignments of the oil and gas lease to [appellees] are champertous and void" based upon the appellants' adverse possession of the mineral tract; Argument 5 that "the doctrine of *res judicata* does not apply to this case"; and Argument 8 that "[the appellees] abandoned any rights [they] had in the 1982 judgment."

As previously noted, the 1982 judgment adjudicated that the heirs of Tandy Martin were the owners of the Tandy Martin mineral tract. The appellants contend that the May 1982 judgment is not *res judicata* because that litigation concerned an unrelated coal lease or, alternatively, even if *res judicata* does apply, the judgment was never enforced and was consequently abandoned. If neither of the foregoing apply, the appellants argue that they adversely possessed the mineral tract for over 15 years after the May 1982 judgment, and thus their claim ripened into ownership prior to the filing of the present lawsuit in September 1997.

■ Because the heirs of Tandy Martin were never made parties to this litigation, the appellants' claim of adverse possession to the Tandy Martin mineral tract is not properly before us.

Kentucky cases have had few occasions to address the requirement that the record owner of property be named as a party in a quiet title action. *Chilcutt v. Watts, Inc.,* 297 Ky. 335, 180 S.W.2d 84 (1944) held that the circuit court properly dismissed an action to enjoin the cutting of timber and to quiet title in land where the United States: 1) filed a "Suggestion of Interest to the United States" indicating that it was the record owner of part of the land and timber in question as a result of a condemnation action; 2) had not been made a party and 3) did not consent to be sued in Laurel Circuit Court. But the quiet title statute, Kentucky Revised Statutes (KRS) 411.120 does not specify that record owners must be joined. Nor are the provisions of KRS 353.466, dealing with severed mineral interests of unknown or missing owners, implicated in this action due to the manner in which the litigation developed.

However, a review of cases from other jurisdictions, an illustrative sample of which is set forth below, demonstrates that it is clearly the rule that the owner of record must be named as a party to a quiet title action.

"A trial court may not render judgment quieting title to disputed property 'in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged.'" *Hersh v. Plonski,* 156 N.H. 511, 938 A.2d 98, 101 (2007), citing *Sorenson v. Wilson,* 124 N.H. 751, 476 A.2d 244, 247 (1984). "The proceedings in the case before us were flawed because the record owner was not given notice of the petition to quiet title, and was not made a party." *Koonce v. Mitchell,* 341 Ark. 716, 19

S.W.3d 603, 605 (2000). "No decree can enter affecting title to real estate unless all of the parties who will be directly affected by any judgment that may be rendered are before the court." *Goodman v. Bank of Boston Connecticut,* 27 Conn.App. 333, 606 A.2d 994, 998 (1992). "[I]n an action to quiet title all persons appearing of record to have a possible claim or interest in the land involved should be made parties." *Wacker Oil, Inc. v. LoneTree Energy, Inc.,* 459 N.W.2d 381, 383 (N.D.1990). "An action for quiet title or to remove a cloud on title should join as parties all persons who may have a substantial interest therein and who will be materially affected by the decree." *Lakeview Trust & Sav. Bank v. Estrada,* 134 Ill.App.3d 792, 812, 89 Ill. Dec. 569, 480 N.E.2d 1312, 1327 (1985). "No decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the court." *Graham v. Zimmerman,* 181 Conn. 367, 435 A.2d 996, 999–1000 (1980)(internal citation and quotation marks omitted). "All persons who are materially interested in the suit, or in the subject matter, or without whom no effective judgment or decree can be rendered, should be made parties, either as plaintiffs or defendants." 74 C.J.S. Quieting Title § 60 (2008) (Footnotes omitted).

The foregoing authorities amply demonstrate that it is the rule that the record owners in a quiet title action (such as the Tandy Martin heirs in the present case) are required to be named as parties to the action.

Moreover, under CR 19.01, a necessary party is a party who should be joined in an action, and under CR 19.02, an indispensable party is a party who must be joined in an action, and in such party's absence, the action may be dismissed. An indispensable party is "one whose absence prevents the Court from granting complete relief among those already parties ... [or] whose interest would be divested by an adverse judgment." *Liquor Outlet, LLC v. Alcoholic Beverage Control Board,* 141 S.W.3d 378, 387 (Ky.App.2004)(internal citations and quotation marks omitted).

In our view the failure to include the Tandy Martin heirs as parties to the lawsuit is fatal to the appellants' counterclaim of adverse possession of the Tandy Martin mineral tract. The Tandy Martin heirs are record holders of title to the property pursuant to the 1912 deed. Their status as the lawful owners of the mineral estate was reaffirmed in the 1982 judgment in the coal lease case. The appellants, in effect, seek to defeat the ownership interest of the Tandy Martin heirs in the T.A. Martin mineral estate in a lawsuit in which the heirs are not present to defend their title.

As the appellants' adverse possession claim is not properly before us, we will not address the issue upon the merits, nor any of the other issues listed above which are ancillary to the claim. We accordingly remand upon this issue for dismissal of the appellants' counterclaim of adverse possession, without prejudice.

## VALIDITY OF APPELLEES' LEASEHOLD

The appellants contend, for various reasons, that the appellees do not possess a valid leasehold interest in the Tandy Martin mineral estate and, therefore, are not entitled to enter onto their property to work the lease. Among the reasons alleged that the appellees do not possess the leasehold are (1) the Cooley/T. A. Martin Partnership lease has been abandoned; (2) that the appellees have failed to obtain valid assignments of the T.A. Martin Partnership interests so as to qualify as assign-

ees of the lease; (3) KRS 362.270(2)(b) (A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property) prevents the appellees from having obtained the T.A. Partnership assignments upon which the appellees base their rights to the leasehold; (4) the well transfer from Lawrence Hall to Clean Gas was fraught with irregularities; (5) there is evidence of forgery in the assignment of William W. Johnson, Jr.'s, interest in the T.A. Martin Partnership to the appellees; (6) there was a conflict of interest involving the attorney who prepared the deed for Town Hall's [6] transfer of his interest in the lease; (7) and that "there isn't any real evidence of the existence of a T.A. Martin Partnership or that this partnership is the successor in interest to the W.W. Cooley lease. What there is smacks of fraud." The appellants contend that there are genuine issues of material fact relating to all of the foregoing issues.

■ The appellees' valid possession to the rights in the Cooley/T. A. Martin lease (assuming the lease is still valid) is crucial because it is the "right to enter" provisions of the lease, express or implied, which would entitle them to enter onto the appellees' property to work the lease. *See Wiser Oil Co. v. Conley*, 346 S.W.2d 718 (Ky.1960) (A deed or lease of minerals carries with it the right to use as much of the surface or other property as may be reasonably necessary to exploit the minerals). If the appellees, however, do not possess a valid lease to the mineral tract, the appellants would, of course, be entitled to deny them access to their property under normal trespass law. *See Wilburn v. North Jellico Coal Co.*, 272 Ky. 749, 115

S.W.2d 288 (Ky.1938) (Land owner may perpetually enjoin trespass to his land). Thus, the burden is upon the appellees to establish that they own a valid lease to the T.A. Martin mineral tract, and, moreover, they must do so upon the strength of their own title. *Jenkins Co. v. Ramey*, 239 S.W.2d 458, 459 (Ky.1951).

■ The trial court's March 3, 2005, order awarding the appellees summary judgment upon all issues (except property damages as later modified) stated that "the claims asserted by the defendants herein are barred by *res judicata*." While the 1982 judgment may well have been *res judicata* upon the issue of the Tandy Martin heirs' ownership of the mineral estate (we need not, and do not, decide that issue), it certainly was not *res judicata* as to the validity of the appellees' present claim to ownership of the Cooley leasehold or the validity thereof. Neither these issues nor any of the other issues raised by the appellants (as listed above) were issues in the 1980 case. Indeed the issues primarily relate to events occurring long after judgment in the case. It follows that the trial court erred in granting summary judgment upon these issues based upon *res judicata*.

In their brief the appellees state as follows:

This appeal presents basically two questions and only two questions. The first question is whether the trial court acted properly and within its discretion in dismissing all claims asserted in the counterclaim (except for the claim for property damage), all based upon the doctrine of res judicata. The second question is whether the trial court acted properly and within its discretion in

---

**6.** On July 11, 1997 Town Hall Jr. (apparently his legal name) and his wife Laurel Jean Hall transferred their interest in the T.A. Mar- tin/W.W. Cooley lease to Barry B. (B.B.) King and his wife Sharon. Mr. King is not the famous blues guitarist of the same name.

granting the injunctive relief sought by the Appellees, again based solely on the doctrine of res judicata. The court clearly based its entire decision on res judicata, which makes it the law of the case and renders irrelevant any arguments by either side based on anything else.

*Appellee brief,* pg. 7.

■ Based upon the foregoing premise, the appellees then state "[s]ince the trial court's decision was based entirely on res judicata (and rightly so), **we therefore choose not [to] respond to the Appellants' arguments based upon anything else.**" *Id.* (Emphasis added). Sure enough, the appellees did not respond to any of the appellants' arguments as set forth above.

■ CR 76.12(4)(d) sets forth the requirements for the organization and content of an appellee brief. CR 76.12(4)(d)(iv) requires the appellee to set forth in his brief an "ARGUMENT" section conforming to the arguments as raised by the appellant in his brief. It has been held that "[a]n appellant's failure to discuss particular errors in his brief is the same as if no brief at all had been filed on those issues." *Milby v. Mears,* 580 S.W.2d 724, 727(Ky.App.1979). We believe the same principle is applicable in the case of an appellee brief.

CR 76.12(8)(c) sets forth the penalties for the failure of an appellee to file a brief. The rule provides as follows:

(c) If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse

the judgment without considering the merits of the case.

As previously noted, the trial court erred in granting summary judgment upon the issues listed above on the basis of *res judicata.* Nevertheless, we may affirm the circuit court for any reason sustainable on the record. *Brewick v. Brewick,* 121 S.W.3d 524, 527 (Ky.App.2003). However, the record in this case consists of 6 volumes of record totaling 853 pages and 7 depositions (with exhibits attached), and there are multiple unbriefed issues. We are not obligated to search a voluminous record for evidence or errors not pointed out by the parties in their briefs. *Martin v. Oliver,* 295 Ky. 624, 175 S.W.2d 127 (1943).

Upon application of CR 76.12(8)(c)(i), we will accept for purposes of this appeal (without actually deciding) the appellants' statement that there are genuine issues of material fact relating to the unbriefed issues. As such, we vacate the trial court's award of summary judgment upon these issues. We emphasize, however, that our disposition does not preclude further properly supported motions for summary judgment upon these issues prior to trial.

## ROAD ISSUES

The appellants contend that the trial court erred in granting summary judgment upon the appellees' "right to use the existing road that crosses part of the Columbus Bates Tract in order to travel to and from the gas well at issue in this case." Because of our disposition of the issues in the immediately preceding section, we likewise vacate this provision of the trial court's award of summary judgment. Again, the appellees' right to enter onto the appellants' property at all will depend upon their establishing a right of entry to do so which, in turn, will require

 

the establishment of their claim to a valid lease to the mineral tract.

### SUMMARY JUDGMENT AFFIDAVITS

■ The appellants contend that it was error for the appellees to have attached the affidavits of two "expert witnesses" to its renewed motion for summary judgment. One of the experts was an attorney who expressed his views upon the *res judicata* effect of the 1982 judgment, and the other was an engineer/surveyor who opined upon the location of the Tandy Martin mineral tract in relation to the appellants' surface tracts. Based upon our disposition of the other issues in the case, this argument is effectively moot. Nevertheless, we briefly note the following.

As preservation of the alleged error, the appellants cite us only to its prehearing statement. They do not cite us to their preservation by presenting the issue to the trial court.

■ It is well-settled that a trial court must be given the opportunity to rule in order for an issue to be considered on appeal, and the failure of a litigant to bring an alleged error to the trial court's attention is fatal to that argument on appeal. *Hines v. Carr*, 296 Ky. 78, 176 S.W.2d 99 (1943). As such, this issue is not properly preserved for our review. Upon remand, if the situation arises again, the appellants should make a proper objection to the trial court.

### CONCLUSION

For the foregoing reasons the judgment of the Knott Circuit Court is vacated and remanded for additional proceedings consistent with this opinion.

ALL CONCUR.