Jeffrey G. GILLAND; Patricia M. Gilland; Mike Cothern; and Angie Cothern, Appellants

v.

Patrick DOUGHERTY; Merry Dougherty; Antonio Travis; Andrea L. Travis; Frances L. Jeffiers Revocable Living Trust; and Frances L. Jeffiers, Appellees

NO. 2015–CA–000286–MR

Court of Appeals of Kentucky.

RENDERED: JUNE 17, 2016; 10:00 A.M.

MODIFIED: AUGUST 26, 2016

BRIEFS AND ORAL ARGUMENT FOR APPELLANTS: Norman E. Harned, Bowling Green, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEES: William T. Hutchins, Bardstown, Kentucky

BEFORE: KRAMER, TAYLOR AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

This is an appeal from a judgment quieting title in property claimed through adverse possession. The disputed property is a wooded area surrounded by several neighboring properties which also contain woods. The wooded area's legal description is not contained in any of the neighboring properties' deeds.

In 2006, Patrick and Merry Dougherty became interested in purchasing a 439.34–acre tract of property from Barbara Cox that included a farm and woods. After they signed a purchase contract, the Doughertys had the property surveyed by Stephen Hibbs. Hibbs determined that part of the wooded portion, consisting of 23.74 acres on the north side of the property, was not included in Cox's chain of title, nor in the property deeds of the adjoining neighbors. This tract was a somewhat irregularly shaped rectangle and its northernmost portion ended at the top of a knob, which had a sheer drop-off on the other side. The border between this tract and Cox's property was roughly "U" shaped. Cox assumed she owned this additional tract.

The Doughertys proceeded to purchase the 439.34–acre tract from Cox (Tract 1) through a warranty deed. Cox did not officially transfer any ownership interest she held in the adjoining wooded tract of 23.74 acres (Tract 2) because this area was not in Cox's chain of title. Because the Doughertys also wanted to obtain ownership of Tract 2, the parties simultaneously entered into a warranty deed for the purchase of Tract 1 and a mutual agreement regarding Tract 2.

The one-page mutual agreement explains that when the Doughertys entered into a purchase contract with Cox, they expected their purchase to include Tract 2 and, therefore, agreed:

Buyer will proceed to close on the purchase of the Property on June 8, 2004. Buyer acknowledges that at the closing of the Property, the 23 acres will not be included in this purchase.

Seller agrees to take all steps necessary to obtain title to the 23 acres by filing a quiet title action. Seller agrees to immediately after closing begin this process. Seller shall be responsible for the costs associated with this action.

Cox, who was elderly, did not file a quiet title action.

Rather than filing suit against Cox to enforce the mutual agreement, the Doughertys filed a quiet title action in regard to Tract 2, pursuant to Kentucky Revised Statutes (KRS) 411.120, naming the adjoining property owners of Tract 2: Mike Cothern, Angie Cothern, Jeffrey Gilland, Patricia Gilland, Anthony Travis, Andrea L. Travis, the Francis L. Jeffiers Revocable Living Trust and Francis L. Jeffiers. To establish their ownership of Tract 2, the Doughertys claimed that although Tract 2 was not included in the legal description of their property, it belonged to them because: (1) Tract 2 was not in the legal descriptions of the defendants' properties but instead had always been known to be a part of the Cox farm; (2) it was always farmed and otherwise included in the Cox farm; (3) it was continuously, openly, and notoriously occupied and used by the owners of Tract 1; and "[n]either the Defendants herein nor any other party has any legal color of title, claim, or other ownership interest in the property known as Tract 2 and described in this Complaint."

The Travises and Francis L. Jeffiers on behalf of herself and the Francis L. Jeffiers Revocable Living Trust did not officially answer, but sent letters disclaiming any interest in Tract 2.

The Gillands and the Cotherns (the defendants/appellants) filed an answer denying the Doughertys' right to Tract 2 and raised affirmative defenses. They requested dismissal of the Doughertys' complaint for failure to state a claim and failure to join an indispensable party pursuant to Kentucky Rules of Civil Procedure (CR 19) because the chain of title of property including Tract 2 was owned by W.D. Stark, so he or his heirs should be joined as parties. They also asserted that they could have superior claims to Tract 2 over the Doughertys if Tract 2 is abandoned.

The Doughertys were granted leave to file an amended complaint. In their amended complaint, the only substantive change was the alteration of their statement that "[n]either the Defendants herein nor any other party has any legal color of title, claim, or other ownership interest in the property known as Tract 2 and described in this Complaint[ ]" to "[t]he Defendants herein do not have any legal color of title, claim, or other ownership interest in the property known as Tract 2 and described in this Complaint."

The defendants' answer to the amended complaint remained substantially the same as their original answer and included the same affirmative defenses. However, they denied that Tract 2 was not within the legal description of their properties because some portions of it may overlap their property lines.

Additional claims to Tract 2 were made in the defendants' answers to interrogatories. The Cotherns stated they used Tract 2 for four-wheeler riding and had the same claim to Tract 2 as the Doughertys. The Gillands stated Mr. Gilland hunted on Tract 2 from 1988 until 2000 and, according to a plat, Tract 2 was previously part of the Ayers tract they purchased in March 1, 2007.

The case proceeded to a bench trial on May 13, 2013. At trial, evidence was introduced regarding Cox's use of the property and fence line. The defendants testified to their longstanding recreational use of Tract 2 but did not present any evidence

that it was included in their chains of title. Because we determine that the issue of indispensable parties is determinative, we only discuss the evidence introduced relating to that issue.

The evidence regarding record ownership of Tract 2 was presented by the parties' surveyors, Hibbs (for the Doughertys) and James Adams (for the defendants). According to Hibbs's testimony, he researched the Doughertys' deed history and that of the adjoining properties and could not find Tract 2 in any of the deed histories. He could not find an actual description of Tract 2 anywhere in the court records.

In researching the property deeds adjoining Tract 2, Hibbs found the adjoining Clarence Hill property was the subject of a court case to determine its boundary, with its boundary established by the court-ordered 1916 Irvine survey. The "U" shape defined by the calls F-G, G-H, and H-I in the northern boundary of the 1916 Irvine survey closely matched the west, south and east calls in the boundary to Tract 2 Hibbs located in his 2006 survey, but Tract 2 was not included in the 1916 survey description.

On cross-examination, Hibbs was asked more specifically about the Stark–Fryear deed which the defendants were claiming was the source of Tract 2. He agreed Stark and Fryear had two sources for their deed, 137 acres from a 1903 deed and 375 acres from a 1906 deed, for a total of 512 acres. They then conveyed approximately 483 acres to the Stark brothers in 1920 and 3 1/8 acres to John Purcell (a relative of Fryear). The Stark brothers' deed listed the 1903 and 1906 deeds as the source of that conveyance and Purcell's deed listed the 1906 deed as the source of his deed. Hibbs agreed this left approximately 25.1 acres unaccounted for, with the conveyed deeds being from each side

of Tract 2. He testified there was no description of the remaining area. While using the acreage from the Stark–Fryear deed and subtracting out what was conveyed away, it was probable that the remaining acreage was Tract 2. However, this remaining acreage could not be platted.

Hibbs testified the 1916 court-ordered Irvine survey was a very good survey for its time. It listed Stark as having the boundary between call locations D-E, E-F, F-G, G-H, and H-I, in establishing the boundaries of the Hill farm, with the boundary line established between the H-I call locations referencing the top of the knob. From this survey, Hibbs was satisfied that Tract 2 was on one side of the Hill farm and had no reason to doubt it was owned by Stark at that time. He could not plat the parcels that were conveyed away from the Stark deed to determine whether the 25.1 acres remaining was Tract 2. Deeds in the Cox line from 1916–1969 recited their border as being with Stark. However, some other adjoining deeds now listed their boundary line with Tract 2 as being the Cox line.

After Hibbs completed the survey for the Doughertys, he explained to Mr. Dougherty that it was possible Tract 2 came out of the 375–acre deed owned by Stark and Fryear, but that Cox was in *de facto* possession of this area. He never told the Doughertys that they owned this property.

Adams also testified about his review of the Hibbs survey and his own efforts to determine the record ownership of Tract 2. He testified he believed the Hibbs survey was fairly accurate after checking some of its coordinates; he did not believe it was worthwhile to resurvey these lines. Adams conducted deed research to try to determine the ownership of Tract 2. He determined that at no time was Tract 2 in

Cox's chain of title or in the defendants' chains of title.

In researching the Stark and Fryear property, Adams agreed with Hibbs about the sources of their deed and what acreage was conveyed. He testified the Stark–Fryear deed was a bounded deed, meaning that their property was described as reaching to the surrounding property lines as named in the deed, which included William Purcell, William Hill and others. Therefore, the 1916 Irvine survey of the Hill property was relevant to determining the boundary of the Stark–Fryear deed and established their ownership of property on the other side of the Hill property that was bounded by a common line. The Hibbs survey appeared to accurately retrace that boundary.

Adams testified about the subsequent history of the Stark–Fryear property as found in recorded deeds he researched and generally agreed with Hibbs as to what portions were sold, the source of those deeds and the amount of property remaining to Starks and Fryear. Adams clarified the location of the 3.13 acres sold to Purcell was probably from the border with his existing property to the north and the Stark brothers acquired their property from two sources, first in 1920 when Fryear sold her half interest in the 483.77 acres and then the other half interest retained by Stark in the 483.77 acres in a 1939 deed bearing the same description after Stark died.

Adams explained Stark and Fryear failed to convey all of the 512 acres they owned, and after subtracting the relevant acres sold totaling 486.9, they were left with ownership of 25.1 acres with no legal description because there was no deed recording any sale or transfer of the remaining 25.1 acres. Therefore, that portion was retained by the Stark and Fryear heirs.

Based on the original location of the Stark–Fryear property and the fact that it was reasonably close in size to the 23.74 acres found in Tract 2 led Adams to believe the Stark and Fryear heirs were the record title owners of Tract 2. He believed this was the best explanation for who the record owners were of Tract 2.

Following the conclusion of the trial, the trial court asked the parties to submit proposed findings of fact and conclusions of law. In the defendants' proposed findings of fact and conclusions of law, they submitted the Doughertys' quiet title action should be denied for failure to name or join Stark and Fryear or their heirs as parties because, as the owners of record of the disputed tract, they were indispensable parties.

In the final judgment and conclusions of law entered on October 31, 2014, the trial court issued a six-page opinion that resolved the issues of standing and adverse possession but failed to address the issue of indispensable parties. The trial court also failed to define the boundary it established by awarding Tract 2 to the Doughertys.[1] The defendants filed a motion to alter, amend or vacate the judg-

1. The trial court found the Doughertys provided sufficient evidence of a well-defined boundary, but did not define what it was. In a judgment resolving a boundary line dispute, it is the duty of the trial court to locate and to describe the true boundary line with reasonable certainty and with sufficient particularity to establish its physical placement on the disputed property. 12 Am.Jur.2d *Boundaries* § 113 (2016); 11 C.J.S. *Boundaries* § 226 (2016). *See Ballew v. Denny*, 296 Ky. 368, 371, 177 S.W.2d 152, 153 (Ky.1944) (discussing appointment of a surveyor by the court to establish the boundary set out in the judgment). However, no party raises this deficiency as an issue on appeal and this error becomes irrelevant given our ultimate decision in this matter.

ment which included the argument that the trial court's ruling was erroneous because the Doughertys failed to join Stark and Fryear. This motion was summarily denied. The defendants appealed on several grounds, including the Doughertys' failure to join the indispensable record owners.

The Doughertys argue complete relief could be afforded without joining Stark and Fryear. They argue the experts' testimony at most established that Stark or Fryear may have owned the property because the deeds did not match Tract 2. The Doughertys argue the appellants should have joined Stark and Fryear if they thought they were necessary parties. They argue the existing parties were sufficient because no other parties sought to intervene, the Stark and Fryear heirs may or may not exist, and the appellants should be estopped from presenting this argument because they make no claim to the property itself.

■ During oral argument, both parties argued we should resolve the case on the merits, with the judgment only impacting the parties named in the suit, leaving the Stark and Fryear heirs or anyone else with an interest in Tract 2 able to pursue their interests later. We are not persuaded by the parties' argument. Because the Doughertys failed to name indispensable parties as required by CR and statute, we reverse.

■ The Doughertys filed suit pursuant to the quiet title statute. KRS 411.120 provides in relevant part:

Any person having both the legal title and possession of land may prosecute suit, by petition in equity, in the circuit court of the county where the land or some part of it lies, against any other person setting up a claim to it. If the plaintiff establishes his title to the land

the court shall order the defendant to release his claim to it[.]

KRS 411.120 does not specify whether record owners must be joined in a quiet title action. *Baker v. Weinberg,* 266 S.W.3d 827, 831 (Ky.App.2008). However, the plaintiff's burden in a quiet title action to prove ownership and possession of the land cannot be satisfied while other nonparties have a claim to ownership. *See Combs v. Jones,* 244 Ky. 512, 51 S.W.2d 672, 673–74 (1932).

Although the appellants now seek a judgment on the merits, previously they repeatedly asserted that the Doughertys' suit should be dismissed under CR 19 for failure to join indispensable parties. CR 19.01 states:

A person who is subject to service of process, either personal or constructive, shall be joined as a party in the action if (a) in his absence complete relief cannot be accorded among those already parties, or (b) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

CR 19.02 states:

If a person as described in Rule 19.01 cannot be made a party, the court shall determine whether in equity and good

conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (a) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (b) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (c) whether a judgment rendered in the person's absence will be adequate; (d) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In *Baker*, 266 S.W.3d at 831–32, our Court thoroughly discussed why record owners are indispensable parties. The Court discussed the paucity of authority in Kentucky as to whether the record owner of a property needed to be named as a party in a quiet title action and the absence of language from KRS 411.120 addressing this issue. *Baker*, 266 S.W.3d at 831. The Court then proceeded to review authority from other jurisdictions universally concluding that record owners are necessary parties before determining Kentucky would follow this rule. *Id.* at 831–32. The Court concluded under CR 19.02 record owners are indispensable parties to a quiet title action. Therefore, the Court determined a claim of adverse possession to a mineral tract was not properly before it where the heirs of the record owner of the mineral tract were not made parties to the litigation. The Court remanded for dismissal of the adverse possession claim without prejudice. *Id.* at 832.

In applying *Baker* and CR 19 to this quiet title action, we determine the Stark and Fryear heirs must either be joined as indispensable parties or the quiet title action must be dismissed because the contro-versy cannot be resolved between the existing parties without prejudicing the Stark and Fryear heirs' rights. *Morgan Cty. v. Governor of Kentucky*, 288 Ky. 532, 156 S.W.2d 498, 500 (1941); *Combs,* 51 S.W.2d at 674; *Aetna Life Ins. Co. v. Roper*, 243 Ky. 811, 50 S.W.2d 8, 9 (1932).

The Declaratory Judgment Act also provides an additional basis for dismissal for failure to join indispensable parties which is consistent with *Baker* and CR 19. In *Whitley v. Robertson County*, 406 S.W.3d 11, 18–19 (Ky.2013), the Kentucky Supreme Court noted that questions of law regarding title to real estate may be brought either through an action to quiet title pursuant to KRS 411.120, as occurred here, or by seeking a declaratory judgment regarding ownership pursuant to KRS 418.040 *et seq.*, subject to applicable limitations established by the legislature and the rules and precedents of our Courts.

Although the language contained in KRS 418.040 is much more general than in the quiet title statute, allowing a plaintiff to "ask for a declaration of rights" and for the court to "make a binding declaration of rights[,]" a later section of the Declaratory Judgment Act specifically addresses the necessity of joining indispensable parties, stating in relevant part:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

KRS 418.075. This language is mandatory and self-explanatory: if the record title owners are not joined in this action, this action (1) is premature and improper; and (2) cannot affect them. *See Commonwealth ex rel. Meredith v. Reeves*, 289 Ky. 73, 157 S.W.2d 751, 753–54 (1941) (interpreting Kentucky's previous declaratory

action statute as mandatory and dismissal as warranted where necessary defendants were not joined); *Herbert C. Heller & Co. v. Hunt Forbes Const. Co.,* 222 Ky. 564, 1 S.W.2d 970 (1928) (same, applied to the determination of property owners' rights). Therefore, while the Doughertys brought their quiet title action pursuant to KRS 411.120, because their action could also be brought under a declaratory action and the joinder of necessary parties is equally important in each type of action when determining real property rights, KRS 411.120 should be interpreted consistently with KRS 418.075.

Although the parties did not raise the issue of whether KRS 411.120 should be interpreted consistently with the Declaratory Judgment Act, this is an issue capable of being raised by this Court *sua sponte.* Specifically, KRS 418.065 provides:

> The court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances. The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record. When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it shall remand the case for that purpose; or if in its opinion the action is prematurely brought, or where a ruling in the appellate court is not considered necessary or proper at the time under all the circumstances, it may direct a dismissal without prejudice in the lower court.

As explained in *W.B. v. Commonwealth, Cabinet for Health & Family Servs.,* 388 S.W.3d 108, 112 (Ky.2012):

> KRS 418.065 clearly anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition, and so authorizes the courts to defer consideration until the circumstances are more favorable for a resolution of the issue presented[.]

Therefore, we are authorized under KRS 418.065 to determine that pursuant to KRS 418.075 the trial court erred by proceeding in the absence of the record owners of the disputed property because it is evident that they have an interest and the suit would prejudice their rights to the property.

Therefore, pursuant to the authority of *Baker* and CR 19, and based upon our application of the requirements of KRS 418.075 to quiet title actions, because Stark and Fryear are the record owners of the parcel that contained Tract 2 and there is no evidence that a remaining portion of property with similar acreage to Tract 2 was ever sold, their heirs are indispensable parties. The trial court erred in failing to address this issue and its judgment must be reversed. At minimum, the unknown heirs of Stark and Fryear must be identified and served by constructive service through a warning order attorney. CR 4.05, 4.06 and 4.07.

On remand, the trial court may dismiss this action without prejudice or hold it in abeyance while the Doughertys locate the Stark and Fryear heirs. *See Morgan Cty.,* 288 Ky. 532, 156 S.W.2d at 500 ("if the court cannot determine the controversy between the parties before it without prejudicing the rights of others, the court must require such persons to be made parties or dismiss the action without prejudice.") If no heirs can be located, the Common-

wealth may then become an indispensable party pursuant to our escheat statute. KRS 393.020.

Accordingly, we reverse and remand the Nelson Circuit Court's final judgment granting the Dougbertys' quiet title action for further proceedings.

ALL CONCUR.