RENDERED:  SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1148-MR

COMMONWEALTH OF KENTUCKY                      APPELLANT

                       APPEAL FROM SCOTT CIRCUIT COURT
v.                  HONORABLE BRIAN PRIVETT, JUDGE
                      ACTION NO. 17-CR-00269

KAYLA MELTON                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  The Commonwealth of Kentucky appeals from a

Scott Circuit Court order suppressing evidence of a guardianship order in a

criminal proceeding.[1]  Having reviewed the record and the applicable law, we affirm.

The Appellee, Kayla Melton, is the mother of a minor child, T.K., who was born on January 7, 2013.  John Niemeier is T.K.'s biological father, although he is not named on the child's birth certificate.  Melton listed the name of her boyfriend at that time on the birth certificate.  Following T.K.'s birth, Melton and the child resided with Niemeier and his parents.  Niemeier, Melton and T.K. later moved into an apartment of their own.  In March 2014, they moved back in with Niemeier's parents.  At some point, Niemeier and Melton ended their relationship and, in 2016, T.K. moved in with Niemeier and his girlfriend, Erica Osborne.  Melton has occasionally acted as T.K.'s caregiver.

In July 2017, the Scott District Court entered an order granting full guardianship of T.K. to Niemeier.  The district court's order is not in the record nor are any of the district court proceedings.  Melton apparently acquiesced in the appointment.

On August 18, 2017, Osborne picked up T.K. from his day care without Melton's permission.  Niemeier directed Osborne to do so because he suspected that Melton was planning to take the child to Louisville and he feared for

---

[1] This appeal from an interlocutory ruling is permitted under Kentucky Revised Statutes (KRS) 22A.020.  *See Commonwealth v. Howard*, 665 S.W.2d 320 (Ky. App. 1984).

T.K.'s safety, claiming Melton did not have a valid driver's license and used drugs. Osborne took T.K. to Niemeier's parents' house. Melton broke into the residence and attacked Osborne before grabbing T.K. She told Osborne she would never see him again and fled with the child. Osborne suffered bruising around her eyes and head and on her arms. According to the statement of the police officer who investigated the incident, Niemeier told her that Melton had no custodial rights to T.K. and that he had recently been granted custody of the child by an order signed and entered by the district court on July 17, 2017, apparently referring to the guardianship order.

Melton was indicted on charges of first-degree burglary, custodial interference, third-degree criminal mischief, and first-degree wanton endangerment.

Following the incident at his parents' house, Niemeier filed a motion for temporary sole custody of T.K. The Fayette Family Court conducted a hearing and thereafter granted the motion on January 24, 2018. Its order alluded to a domestic violence order which it had entered in favor of Niemeier and T.K. against Melton, prohibiting Melton from having contact with the child due to her actions which gave rise to the pending charges against her. Melton was ordered to pay child support and have no contact with T.K. until the criminal case was concluded. The family court also ordered Niemeier to submit to a paternity test.

Following her indictment, Melton filed a motion on November 20, 2019, to exclude any use, reference or testimony regarding the guardianship order in the criminal proceedings against her.

The trial court held a hearing on the motion at which the parties debated the significance of custody as opposed to guardianship and which was the superior right. Defense counsel argued that at the time of the incident giving rise to the charges, Melton had custody of the child and that testimony regarding Niemeier's guardianship was irrelevant and could mislead the jury into believing that Niemeier and Osborne had some right to keep the child from Melton. The trial court opined that custody was always superior to guardianship and agreed that the evidence was confusing and not relevant to the legal status of the parties at the time the alleged offenses were committed. The trial court canceled the scheduled trial date in order to give the Commonwealth time to seek a writ of prohibition from the Court of Appeals to address the admissibility of the evidence or to renegotiate a plea with Melton. Apparently neither of these actions were taken and ultimately the trial court entered an order granting Melton's motion on the grounds that the jury would be confused by the guardianship order and possibly believe that guardianship was the equivalent of custody. It stated that it was well-settled law in Kentucky that guardianship is something less than custody and consequently to allow testimony regarding a guardianship against a parent with custody would be

confusing to the jury in a criminal trial. This appeal by the Commonwealth followed.

As a preliminary matter, we note that the record contains almost no materials related to the guardianship proceedings or even the guardianship order that the Commonwealth sought to introduce. The record of the family court proceedings is limited only to the order granting Niemeier's motion for sole custody. "[W]e have consistently and repeatedly held that it is an appellant's responsibility to ensure that the record contains all of the materials necessary for an appellate court to rule upon all the issues raised." *Clark v. Commonwealth*, 223 S.W.3d 90, 102 (Ky. 2007). "[W]hen the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985). Although we have been able to glean some of the background of the case from the motions in the record, it is not the task of the appellate court to search the record for pertinent evidence not pointed out by the parties in their briefs. *Baker v. Weinberg*, 266 S.W.3d 827, 834 (Ky. App. 2008). Thus, our review of the trial court's decision is necessarily limited by the record.

When deciding whether to admit evidence, the trial court is charged with balancing its probative value against the danger of undue prejudice. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). We review the trial

court's decision for an abuse of discretion. *Johnson v. Commonwealth*, 105 S.W.3d 430, 438 (Ky. 2003). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

The Commonwealth argues that the trial court wrongfully excluded evidence of Niemeier's guardianship because it was highly probative of the charge of custodial interference against Melton. The statute provides that "[a] person is guilty of custodial interference when, knowing that he has no legal right to do so, he takes, entices or keeps from lawful custody any mentally disabled or other person entrusted by authority of law to the custody of another person or to an institution." KRS 509.070(1). "[T]he combined effect of the custodial interference statute and those prohibiting kidnapping and unlawful imprisonment makes 'unlawful imprisonment and kidnapping inapplicable to situations involving the acquisition of control over another because of familial affection or considerations, and to create a special offense to deal with conduct involving an interference with lawful custody.'" *Karsner v. Commonwealth*, 582 S.W.3d 51, 53 (Ky. App. 2018) (quoting the 1974 Kentucky Crime Commission/LRC Commentary to KRS 509.060).

The Commonwealth contends that the plain language of the guardianship statute, KRS 387.010(3), which defines a guardian as someone

having "care, custody, and control of a minor[,]" did in fact give "custody" of T.K. to Niemeier, and that the order was also probative of Niemeier's state of mind, in that he believed the district court order gave him custody of T.K. and consequently he had the right to keep T.K. away from Melton.

In *Hicks v. Halsey*, a panel of this Court distinguished legal custody from guardianship as follows: "Custody determinations are within the jurisdiction of circuit (or family) court. KRS 23A.100. Guardianship comes within the jurisdiction of district court. KRS 387.020. Furthermore, guardianship is not the equivalent of custody. Guardianship gives a person 'the powers and responsibilities of a parent regarding the ward's support, care, and education[.]' KRS 387.065(1). Although the guardian 'shall take custody of the ward[,]' guardianship is not necessarily the same as legal custody. KRS 387.065(2)(a)." *Hicks v. Halsey*, 402 S.W.3d 79, 83 (Ky. App. 2013). *Hicks* thereafter cites with approval an unpublished Court of Appeals opinion, which held that a voluntary guardianship agreement between a mother and a non-parental couple did not divest the mother of her superior custody rights. *Id.* (citing *R.T. v. D.R.*, No. 2008-CA-000559-ME, 2008 WL 4754829 at *4 (Ky. App. Oct. 31, 2008)).

Thus, Melton's custody of T.K. at the time of the incident leading to the criminal charges was superior to Niemeier's guardianship by virtue of her status as his biological mother. Biological parents "have a fundamental, basic, and

-7-

constitutional right to raise, care for, and control their own children." *Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010) (citation omitted). Niemeier's name did not appear on the child's birth certificate and there had been no adjudication of his paternity, as evidenced by the family court's order of a paternity test in the subsequent temporary custody proceedings. There is no indication that Niemeier's status as a guardian gave him the legal right to keep T.K. away from Melton for purposes of KRS 509.070(1), nor does the Commonwealth argue that Melton's acquiescence in the guardianship constituted a clear and convincing waiver of her superior right to custody. *Vinson v. Sorrell*, 136 S.W.3d 465, 468 (Ky. 2004). We conclude that the trial court did not abuse its discretion in deciding that evidence of Niemeier's guardianship was of limited probative value and could potentially confuse the jury.

For the foregoing reasons, the order of the Scott Circuit Court granting the motion to suppress evidence of the Scott District Court's guardianship order is affirmed.

MAZE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, DISSENTING: I dissent as I believe the guardianship order, although not made part of the record on appeal, is almost

-8-

essential for the Commonwealth to establish the custodial interference charge, highly relevant for putting the events which led to the charges in context, its exclusion is an inappropriate attempt to force the Commonwealth to dismiss the custodial interference charge, and any possible confusion can be negated by other means.

While the majority opinion and circuit court order did not reference it, Kayla Melton sought to exclude evidence of the guardianship order pursuant to Kentucky Rules of Evidence (KRE) 403 on the basis that allowing its introduction would confuse the jury, because her right to custody as the natural mother of T.K. was superior to John Niemeier's right under the guardianship order. Considering the exclusion pursuant to KRE 403 helps to clarify the relevant analysis needed.

"[T]he Kentucky Rules of Evidence are 'intended to be flexible enough to permit the prosecution to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary context, background and perspective.'" *McLemore v. Commonwealth*, 590 S.W.3d 229, 235 (Ky. 2019) (quoting *Major v. Commonwealth*, 177 S.W.3d 700, 708 (Ky. 2005)). "[T]he jury [is] entitled to know the setting of the case and . . . receive evidence regarding the time, place and circumstances of the acts forming the basis of the charge against [the defendant] such that its decision would not have to be made in a vacuum." *Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky.App.

1994). "'Confusion of the issues' is generally used to exclude evidence that creates side issues that distract jurors from the real issues of the case." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 715 (Ky. 2009).

*Webb v. Commonwealth*, 387 S.W.3d 319 (Ky. 2012), explains the relevant standards the circuit court should have applied in determining whether evidence needed to be excluded under KRE 403, in that case examining whether evidence of another crime should be excluded when linked to the identification of the perpetrator.

> There are three basic inquiries that must be made by the trial court when making a determination under KRE 403:
>
> > (i) assessment of the probative worth of the evidence whose exclusion is sought; (ii) assessment of the probable impact of specified undesirable consequences likely to flow from its admission (*i.e.*, undue prejudice, confusion of the issues, or misleading the jury, undue delay, or needless presentation of cumulative evidence); and (iii) a determination of whether the product of the second judgment (harmful effects from admission) exceeds the product of the first judgment (probative worth of evidence).
>
> . . .
>
> KRE 403, which is derived from its Federal counterpart, does not offer protection against evidence that is merely prejudicial in the sense that it is detrimental to a party's case. The Commonwealth is permitted to prove its case by competent evidence of its own choosing. . . .

Furthermore, there are certain aspects of the case that are so intertwined with the other evidence that they must be admitted in order to paint an accurate picture of the events in question.

One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other and is thus part of the res gestae of the crime charged.

It is for these reasons that where evidence is needed to provide a full presentation of the offense, or to complete the story of the crime, there is no reason to fragment the event by suppressing parts of the *res gestae.*

*Id*. at 326 (internal quotation marks, citations, parentheticals, ellipses and brackets omitted).

Based on this analysis, in *Webb* the Court concluded that it was appropriate for the inmate to provide the context for how he knew the defendant. *Id.* Using similar reasoning, in *McLemore* the Court concluded that evidence about a shooting that took place three months earlier involving different parties was more probative than prejudicial, warranting admission under KRE 403, because it was

-11-

part of the *res gestae* explaining the motive behind the defendant and codefendant shooting someone else. *McLemore*, 590 S.W.3d at 235-36.

I believe the circuit court abused its discretion by excluding the guardianship order because the Commonwealth was thereby prevented from presenting a complete picture of what occurred regarding the custodial interference charge and all of the other charged crimes. The guardianship order is key to the *res gestae* and explains why Niemeier believed he was authorized to have his girlfriend, Erica Osborne, retrieve T.K. from daycare and provides the legal basis of the custodial interference charge based upon Melton forcibly taking T.K. from Osborne. The Commonwealth has great latitude in how it seeks to prove its case. Who had a right to custody of T.K. was a central issue in the case and the guardianship order was certainly probative on this issue. The order itself was likely straightforward and not confusing in and of itself. It is its legal implications which Melton truly wanted excluded.

It appears that Melton was attempting to, in effect, prematurely obtain a directed verdict on the custodial interference charge (and was essentially granted that by the circuit court as the exclusion of this evidence will make pursuing the custodial interference charge extremely problematic). Only the Commonwealth is entitled to dismiss an indictment pursuant to Kentucky Rules of Criminal Procedure (RCr) 9.64 subject to very limited exceptions which are not applicable

-12-

here. *Commonwealth v. Hill*, 228 S.W.3d 15, 17 (Ky.App. 2007). A trial court has neither the ability nor the authority to dismiss or amend a complaint itself which is valid on its face; even if a trial court believes the basis for the charge is legally unsupportable, it cannot act until a trial is held and the Commonwealth fails to present sufficient evidence to convict, thus warranting a directed verdict. *Commonwealth v. Isham*, 98 S.W.3d 59, 61-62 (Ky. 2003). Therefore, in *Isham*, it was not appropriate for the trial court to find that the defendant's alleged statement could not constitute the crime of terroristic threatening prior to a trial on the merits. *Id.*

I believe we should not allow the circuit court to make an "end run" around the prohibition against a trial court dismissing a charge by barring evidence that is highly probative of the crime of custodial interference. Simply put, the majority opinion and the circuit court are focused on the wrong thing by evaluating whether custody is superior to guardianship and then using this analysis to justify excluding such evidence. Whether or not custody is superior to guardianship, such a legal conclusion is not an adequate basis for prohibiting the introduction of the guardianship order.

Additionally, whether or not Melton might ultimately be entitled to a directed verdict on the custodial interference charge, the guardianship order would still be relevant to explain why T.K. was with Osborne when Niemeier had not

been adjudicated to be his father, and prevent confusion as to whether Niemeier and/or Osborne were effectively kidnapping T.K. If confused about whether Melton was justified in using "self-help" to retrieve T.K. from someone with no legal authorization to keep him, this could make obtaining convictions on the burglary, criminal mischief, and wanton endangerment charges that much more difficult. The guardianship order would also help explain why the police were called and told Niemeier had custody, and police officers' subsequent actions.

Therefore, my analysis would not change even if the custodial interference charge were to be ultimately dismissed (either by the Commonwealth before trial or by the circuit court at the conclusion of the proof through a directed verdict) because evidence of other uncharged crimes can be admissible in appropriate circumstances. As explained in *Norton*, 890 S.W.2d at 638, separation of the evidence to exclude an uncharged crime is not appropriate if it would "seriously and adversely affect[] the Commonwealth's ability to present the case to the jury." I believe there can be no doubt that the exclusion of the guardianship order would do just that to the Commonwealth's case here.

Reversal is warranted. There are other options available to reduce any possible juror confusion besides excluding the guardianship order. At trial, upon an appropriate request, the circuit court can admonish the jury as to the proper use of the guardianship order and, should the custodial interference charge survive

motions for a directed verdict, appropriate jury instructions can be given to clarify the needed elements for conviction.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Molly Mattingly
Frankfort, Kentucky